







PRICE

COUNTY OF SAN DIEGO

JRB

3:94-CV-01917

*81*

*MEMFACTS.*

CHARLES R. WOODS, ESQ. (SB#95637)
**TROST, STREET, WOODS & MESSINA**
1202 Kettner Boulevard, Suite 4300
San Diego, California 92101
Telephone: (619) 233-7633
Facsimile: (619) 237-8898

Attorneys for Plaintiffs



FILED

DEC 30 1996

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF C...
BY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN PRICE, an individual; ANN PRICE, as Guardian ad Litem of BENJAMIN PRICE, a Minor and UNBORN BABY PRICE, a Minor in Utero; ROBERT PRICE; MARGARET PRICE and the Estate of DANIEL L. PRICE, deceased, through its Administrator, ANN PRICE, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO; JOHN GROFF; STEVEN CLAUSE; MARK TALLEY; JIM ROACHE; SAM SHEPARD; and DOES I through 50, inclusive, <br><br> Defendants. | CASE NO. 94-1917R (AJB) <br><br> PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW |

Plaintiffs, ANN PRICE, an individual; ANN PRICE, as Guardian ad Litem of BENJAMIN PRICE, a Minor and JOSHUA PRICE, (formerly UNBORN BABY PRICE, a Minor in Utero); ROBERT PRICE; MARGARET PRICE and the Estate of DANIEL L. PRICE, deceased, through its Administrator, ANN PRICE, through their attorney Charles R. Woods, Esq. of TROST, STREET, WOODS & MESSINA, respectfully submit this Memorandum of Contentions of Fact and Law, pursuant to Local Rule

1

ORIGINAL

16.1 (f).

## INTRODUCTION

This is a civil rights case brought pursuant to the Federal Civil Rights Act, 42 U.S.C. § 1983, et seq. Wrongful death state claims of battery, negligence and negligent hiring, training and supervision are alleged as well.

Plaintiffs allege that on June 28, 1994 Poway Sheriff deputies confronted plaintiff's decedent, DANIEL PRICE who, after a brief scuffle, placed Mr. PRICE in a four-point restraint (commonly referred to as a "hogtie"). DANIEL PRICE lost consciousness while he was hogtied and then died one and a half days later at Pomerado Hospital. The San Diego County Medical Examiner's autopsy report, prepared by Dr. John W. Eisele, Deputy County Medical Examiner, concluded that Mr. PRICE died from positional asphyxia caused by application of the hogtie and leaving Mr. PRICE prone after the hogtie restraints were removed. Low, non-lethal levels of methamphetamine were found in Mr. PRICE's blood and tissue during the autopsy.

Plaintiffs herein, i.e. DANIEL PRICE's estate, his surviving spouse, ANN PRICE, two children (seven year old BENJAMIN and one year old JOSHUA) and DANIEL's parents, MARGARET and ROBERT PRICE bring his action against the COUNTY OF SAN DIEGO, former County Sheriff JIM ROACHE, Deputies JOHN GROFF, STEVEN CLAUSE, SAMUEL SHEPPARD and MARK TALLEY.

Plaintiffs allege that the individual deputies used excessive and unreasonable and deadly force when they hogtied and later left DANIEL PRICE prone and unconscious, following the initial contact and failed to provide CPR first aid to DANIEL PRICE as he was

2

unconscious, not breathing and turning blue.

Further, plaintiffs allege that then sheriff JIM ROACHE was individually and representatively negligent in his decisions as to training and supervision of the deputies in the use of and application of and employment of the hogtie restraint, and further that the COUNTY OF SAN DIEGO, through the Sheriff Department displayed callous, reckless and deliberate indifference to the constitutional rights of DAN PRICE and other similarly situated arrestees, to be free from unreasonable and excessive force, by deliberately failing to implement proper policies and procedures with respect to the application of the hogtie restraint, until two months after DAN PRICE had been killed, even though Sheriff ROACHE and the Sheriff Department and through them, the COUNTY OF SAN DIEGO were in possession of the necessary scientific and medical data, two years previous to DAN PRICE's death, outlining the proper use of the hogtie procedure, and the dangers associated with hogtying if the proper procedures were not used by deputies applying a hogtie restraint.

The conduct displayed by the deputies was an unreasonable use of deadly and excessive force and thus constituted an unlawful seizure in violation of the Fourth Amendment. <u>Graham v. Conner</u>, 109 S.Ct. 1865 (1989). The facts alleged also constituted a battery, negligence, and/or negligent training and supervision under California state law.

<u>STATEMENT OF FACTS</u>

On June 28, 1994 at approximately 4:00 p.m., on a hot 100° day in Poway, California, DAN PRICE was contacted on Tobiasson Street, in Poway, California by sheriff deputy JOHN GROFF and reserve

3

deputy STEVEN CLAUSE.  DAN PRICE was 37 years old at the time.  Mr. PRICE was 6'3", 235 lbs., Deputy GROFF was 6'7", 270 lbs. and Deputy CLAUSE was 5'11', 255 lbs.  The deputies had been dispatched to Tobiasson Road to investigate a citizen 911 complaint of a man throwing things in the bushes of a house.  As they arrived at Tobiasson Road, GROFF and CLAUSE's patrol car drove beside a bronze pickup truck driven by DAN PRICE at Tobiasson Road and Shallman Street.  PRICE told Deputy GROFF that he was fixing a mirror on his truck and explained that he was going to a friend's house.  The deputies allowed Mr. PRICE to pull away but minutes later decided to follow him.  When he made a turn other than what they expected, they determined that they would recontact Mr. PRICE and question him further.  The deputies police car pulled Mr. PRICE over at the intersection of Tobiasson and Vaughn and parked itself approximately ten feet behind the tailgate of Mr. PRICE's pickup. Mr. PRICE exited his pickup truck first (according to Deputy GROFF's testimony but after Deputy GROFF exited his vehicle, according to Deputy CLAUSE's testimony).  Deputy CLAUSE testified that he wrestled PRICE to the ground whereas Deputy GROFF contends that he wrestled PRICE to the ground.  As Deputy GROFF handcuffed and sat upon Mr. PRICE, backup was called and Deputies SHEPPARD and TALLEY arrived shortly on the scene.

The four deputies determined that they should hogtie Mr. PRICE and leg shackles were obtained from TALLEY's patrol car and attached to Mr. PRICE's ankles.  The shackled ankles and handcuffed wrists were then joined, behind Mr. PRICE's back, by a single set of handcuffs.  Mr. PRICE allegedly was smashing his face into the ground before and after being hogtied and thereafter one of the

4

deputies was seen by one of the neighborhood witnesses to put his boot on the back of Mr. PRICE's head while Mr. PRICE was allegedly smashing his face into the ground.

During the struggle with the sheriff officers, DAN PRICE was sprayed with pepper spray (OC) by Deputy CLAUSE two or three times.

Mr. PRICE was prone on his belly and at various times was sat upon by Deputy GROFF and pressed into the ground by a knee in his upper back from Deputy TALLEY. The asphalt surface of the Tobiasson and Vaughn roadway intersection is calculated, scientifically, to have been 134° hot at the time DAN PRICE was placed upon it. DAN PRICE was left on that roadway surface and not moved by any of the deputies to shaded residential lawns only twenty or thirty feet away.

When DAN was noticed to be breathing heavily and later with shallow breathing, the deputies removed the connecting handcuffs from the leg and wrists shackles. No pulse was noted.

At 16:42 an ambulance was sent for by the four deputies requesting CPR/medical, (according to the paramedic records). Deputies CLAUSE and TALLEY had radioed sheriff's department headquarters at 16:36 reporting that they had "one in custody". Six minutes later the call was sent for the ambulance. The deputies contend that the call was sent to the ambulance only because PRICE was bleeding from the face. The paramedic records indicate a call was made for CPR/medical. Paramedics from the Poway Fire Department and the San Diego Fire Department along with hook and ladders arrived on the scene at 16:48. Neighborhood witnesses Tim Thomas and June Jones and Gene Syrios have testified that Mr. PRICE was not moving, turning blue, not breathing and

5

prone on his belly for at least seven to nine minutes prior to the arrival of the paramedics.

Although each of the deputies was trained in CPR first aid, no attempt at CPR resuscitation was made by the deputies prior to the paramedics arriving. Paramedics found DAN PRICE ten or twenty feet away from the deputies and prone, on his belly. One deputy, GROFF, was seen to be pacing back and forth, very much distraught and crying, at the time of their arrival. Deputy TALLEY later testified that Deputy GROFF was upset because it was the second death in which he had played a role, in a six-month period and that "two deaths in one year was too much" or words to that effect. Paramedics from Poway Fire Department and San Diego Fire Department began their work on DAN PRICE at the scene including application of CPR, the administration of drugs and intubation.

DAN was transported at 17:03 to Pomerado Hospital, ironically, where he had, three weeks earlier, quit his employment as supervisor of Transport Services at that hospital.

One and a half days later at 4:00 a.m. on June 30, 1994 DAN PRICE died. The autopsy of San Diego County Deputy Medical Examiner, John W. Eisele, M.D., stated cause of death to be "hypoxic encephalopathy due to restrictive asphyxia with cardiopulmonary arrest due to maximum restraint in prone position by law enforcement." Dr. Eisele described in his autopsy report that even after the maximum restraint was removed

". . . all external weight was removed from his body but he was left in a face down position". Petichaie (pinpoint) hemorrhaging, which indicates compression of the torso causing asphyxia, were found in DAN PRICE's left eye. The autopsy report also uncovered

6

small, non-lethal quantities of methamphetamine in DAN PRICE's system. No one can testify how much methamphetamine was ingested or when it was ingested by DAN PRICE relative to the time of his contact with the sheriff deputies.

The police restraint technique of hogtying (maximum four-point restraint) had been studied by various police agencies around the country including but not limited to San Diego Police Department as early as 1992. By mid-1992 many police agencies throughout the country, including but not limited to SDPD, California Highway Patrol, Los Angeles Sheriffs, New York City Police Department, Walnut Creek Police Department, Kansas City Police Department, and many other agencies had begun to either outright ban the use of hogtying or if not ban it, carefully instruct the field deputies and officers in the proper use of hogtying. Particularly, deputies were told, prior to June 1994, that hogtie victims were not to be left on their belly and were not to be left unmonitored. Further, no arrestee at any time during the process of hogtying was to have force applied to their back.

In this case, none of the deputies involved received any training in the hogtie procedure nor were any of them ever instructed by San Diego Sheriff Department in the proper application of the technique on what was to be done once it had been applied to a person in custody.

The San Diego Sheriff Department and Sheriff ROACHE were in possession of the San Diego Police Department's Final Report of the In Custody Death Task Force in which the dangers of hogtying and its proper application, were carefully discussed. Sheriff ROACHE, however, was "not satisfied" that the San Diego Police Department

work was necessarily complete and therefore waited more than two years until August 1994, two months after DAN PRICE died, to send his first training bulletin to the San Diego Sheriff field deputies explaining how hogtying should be applied and what should be done once a person was in the hogtie position. The County of San Diego Sheriff Department deputies still use the hogtying technique, however, they are now receiving training on the proper application of the restraint and what should be done once a person is hogtied, including but not limited to monitoring, no back pressure, and no leaving of the subject in a prone position.

## STATEMENT OF DAMAGES

This wrongful death action by the various plaintiffs seeks compensation for plaintiff's loss of society, comfort, love and affection in addition to the economic benefits that DAN PRICE would have afforded, had he lived, to his wife and two sons. DAN's parents, MARGARET and ROBERT PRICE seek damages to compensate them for their loss of their son relative to their "liberty interest" in the 42 § 1983 portion of the case.

Plaintiffs' economist, expert witness Robert Trout has testified at deposition that as of May 31, 1996 the economic losses to the wife and children, less DAN PRICE's consumption of monies and reduced to present value, total $583,664.00. This figure represents $43,635.00 in past lost income and $540,029.00 in future lost income. Mr. Trout's calculations are attached as Exhibit 1. The past lost wages should be increased, for purposes of an April or May trial date to approximately $70,000.00, for a total economic loss of roughly $610,000.00.

DAN's parents, ROBERT and MARGARET PRICE's "liberty interest"

8

1  award would reasonably be in the amount of $100,000.00 each (i.e.
2  per parent).

3     The loss of consortium type damages associated with 12-year
4  wife ANN's losses and seven year-old BENJAMIN and one-year old
5  JOSHUA's losses are extremely difficult to estimate.  A reasonable
6  figure for such losses would be $1 million per wife and per child.

7                    **WRONGFUL DEATH CASE INFORMATION**

8     DAN PRICE's date of birth: August 22, 1958 (i.e. 35 years 10
9  months at the time of death); married March 12, 1983 to ANN PRICE:
10  date of birth:  August 20, 1957; employed by Palomar/Pomerado
11  Health System since 1985, promoted to supervisor of Transport
12  Services in July 1989 to June 1, 1994 when he quit his job due to
13  stress 27 days before his death;  Plaintiff's expert testimony
14  indicates certain work expectancy after quitting with reasonable
15  probability of promotion (testimony of Richard Sobel, Ph.D. and
16  Richard Jones, Ph.D.); earnings for 5 years before death: 1990 -
17  $20,416.00;  1991  -  $26,656.00;  1992  -  $30,110.09;  1993  -
18  $31,390.93; 1994 (5 months) $12,906.00 (i.e. $31,000.00 if a full
19  year); Life expectancy:  75.1 years, work life expectancy:  62.7
20  years; good general physical condition prior to death; Dates of
21  birth of relatives:  son, BENJAMIN date of birth: October 16, 1989;
22  son, JOSHUA date of birth:  February 14, 1995; mother, MARGARET 59
23  years old;  father, ROBERT 61 years old.   Injuries claimed by
24  relatives:  Wife, ANN and sons BEN and JOSHUA:  loss of financial
25  support,  society,  comfort,  love  and  affection,  as  previously
26  listed, mother and father:  liberty interest losses; allocations of
27  the family's and decedents expenses are found in Exhibit 1 hereto.
28  The minor Plaintiffs claim for loss of the care and nurture (etc.)

9

of their father is $1 million for each boy.

The relevant points of law claimed by plaintiffs are as follows:

### SHERIFF DEPUTIES DEFENDANT LIABILITY

1.   In hogtying plaintiff, at which time defendant deputies stepped on DAN PRICE's head, forcing it into the asphalt surface of the roadway and severely lacerated his wrists and ankles with the manacles, and then leaving DAN PRICE unattended, unmonitored and literally roasting on the 134° asphalt road surface, and by failing to provide CPR first aid which would likely have resuscitated Mr. PRICE, the defendant deputies used unreasonable deadly force in violation of plaintiff's Fourth Amendment right against unreasonable seizures. U.S. Constitution, Fourth Amendment; Graham v. Connor 490 U.S. 386 (1989); Tennessee v. Garner, 471 U.S. 1 (1985).

2.   The sheriff deputies continued to use deadly force against DAN PRICE when they allowed him to remain prone, on his belly, not breathing, turning blue, remaining unconscious, and the deputies left him unattended and failed to provide the necessary CPR first aid to resuscitate him, after he had stopped breathing, even though the alleged threat possessed by DAN PRICE to the officers had been rendered less than that which justified the deadly force applied.   Therefore a cause of action is stated. Hopkins v. Andaya, 958 F.2d 881 (9th Cir. 1992).

3.   A Fourth Amendment violation requires an intentional acquisition of physical control. Brauer v. County of Inyo, 49 U.S. 593, 596 (1989).  However, the gross negligence and recklessness of

10

the deputies in this case, i.e. leaving DAN PRICE in a prone condition, unattended and unmonitored, and failing to provide CPR to DAN PRICE when he was unconscious and not breathing, after they had previously battered his face and arms and wrists during the application of the shackles, states a violation of the due process clause of the Fourteen Amendment. Del Fargo v. City of San Juan Bautista, (9th Cir. 1988) 857 F.2d 638.

4. Abusive use of handcuffs by police officers states a 42 § 1983 cause of action. Hanson v. Black (9th Cir.) 885 F.2d 642.

5. The sheriff deputies in this case displayed deliberate indifference to DAN PRICE's constitutional rights. Redman v. County of San Diego (9th Cir. 1991) 942 F.2d 1435, 1443.

6. The sheriff deputies in this case violated DAN PRICE's Fourth Amendment rights and were negligent for failure to provide CPR first aid to DAN PRICE after they knew or should have known that he had stopped breathing and was turning blue. Estelle v. Gamble, 429 U.S. 97 (1976); City of Reiver v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983); Maddox v. City of Los Angeles (9th Cir. 1986) 792 F.2d 1408; Wilson v. Meeks (10th Cir. 1995) 52 F.3d 1547.

7. DANIEL PRICE, plaintiff's decedent, was assaulted and battered by deputies GROFF, CLAUSE, TALLEY and SHEPPARD by their use of unreasonable deadly force in hogtying DAN PRICE and allowing him to remain prone, unmonitored, turning blue and not breathing for five to fifteen minutes before the arrival of the paramedic ambulance. BAJI 7.50-7.51 (1992 Revision); Raines v. Superior Court (1984) 150 Cal.App.3d 933, 938.

8. The circumstances of this incident and the hogtying

11

itself and the attendant behavior of the deputies following application of the hogtie restraint constituted negligence and a breach of the duty of due care owed to DAN PRICE, causing injuries to plaintiff's decedent DAN PRICE entitling plaintiffs to wrongful death damages pursuant to California law. BAJI 3.00-3.12; <u>Grudt v. City of Los Angeles</u> 2 Cal.3d 575 (1970) and; <u>California Government Code § 815.2.</u>

## MUNICIPAL LIABILITY

A municipality is directly liable under 42 § U.S. 1983 for a constitutional deprivation caused by its unconstitutional policy or procedures. <u>Monell v. Department of Social Services of New York</u> 436 U.S. 658 (1978).

1.   The standard for imposing municipal liability under 42 § U.S. 1983 is <u>deliberate indifference</u> to the rights of persons with whom police come in contact. <u>City of Canton v. Harris</u> 489 U.S. 378 (1989).

A municipality can be held liable, however, only when its policies are the moving force behind the violation. <u>Polk County v. Dodson</u> 454 U.S. 312 (1981).

2.   Then San Diego County Sheriff, Jim Roache has testified that he made a conscious decision not to ban hogtying and not to train his deputies in the application of hogtying and of the attendant dangers to this restraint technique, even though police agencies throughout the country had done so, (particularly San Diego Police Department), and therefore, under <u>Monell</u> and <u>Canton</u> and related cases because Sheriff Roache was a municipal policy maker under <u>City of St. Louis v. Proprotnik</u> 485 U.S. 112 (1988), the COUNTY has demonstrated the requisite deliberate indifference required for direct liability against a municipality. <u>Monell, supra</u>.

3.   Plaintiffs are entitled to general and compensatory damages and liberty interest damages for all injuries and damages legally caused by the acts of the defendants.   42 U.S.C. § 1983 et. seq.; BAJI 14.00 et seq.

4.   Plaintiffs are entitled to punitive damages against defendants GROFF, CLAUSE, TALLEY, SHEPPARD and ROACHE pursuant to Federal law if plaintiffs proof reckless or malicious or callous indifference to DAN PRICE's federally protected rights.   Smith v. Wade 461 U.S. 30 (1983); Gordon v. Norman (6th Cir. 1986) 788 F.2d 1194, 1199.

5.   Should plaintiffs prevail, they will be entitled to costs and attorney's fees pursuant to 42 U.S.C. § 1988.   City of Riverside v. Rivera (1986) 477 U.S. 561 (1986).

6.   This Court has supplemental/pendent jurisdiction of plaintiffs' state law causes of action.   Traver v. Meshriy (9th Cir. 1980) 627 F.2d 934; 28 U.S.C. § 1367.

7.   Then County Sheriff JIM ROACHE, defendant herein, is personally liable pursuant to state law and federal law. California Government Code § 82.8; Ybarra v. Reno, etc. (9th City. 1984) 723 F.2d 675; Michael v. Smith, 188 Cal.App. 199 (1922);

8.   Plaintiffs' state law causes of action for negligent hiring, training, retention and supervision is proper.   Grudt v. City of Los Angeles 2 Cal.3d 575 (1970); Bell v. City of Palos Verdes Estates, 224 Cal.App.2d 257.

9.   COUNTY OF SAN DIEGO is vicariously liable for its employees' negligence under Government Code § 815.2 and the doctrine of respondeat superior.   See Tony v. State 54 Cal.App.3d 779 (1976).

## ABANDONED ISSUES

No issues have been abandoned. Defendants' summary judgment motion, however, was granted as to plaintiffs' claim under California Civil Code § 52.1.

## EXHIBITS

See attached list of plaintiffs' exhibits.

## WITNESSES

See attached list of plaintiffs' witnesses.

DATED: December 30, 1996     Respectfully submitted,

                             TROST, STREET, WOODS & MESSINA

                             By: _____
                                 CHARLES R. WOODS
                                 Attorneys for Plaintiffs

c:\...\Price\pleadings\memofact.law



**Decedent: Dan Price**

## CHRONOLOGY

| Event | Date | Age | Notes |
|---|---|---|---|
| Contact | 07–Mar–96 | na | Letter |
| DOV | 21–May–96 | 37.7 | |
| DOB | 22–Aug–58 | | Letter |
| Hired | 23–Apr–85 | 26.7 | Letter |
| Quit | 01–Jun–94 | 35.8 | Letter |
| DOD | 28–Jun–94 | 35.8 | Letter |
| WLE @ DOD | 22–May–2021 | 62.7 | BLS A–3(9) |
| Reach 62 | 21–Aug–2020 | 62.0 | |
| LE @ DOD | 15–Oct–2033 | 75.1 | HUD 6–3 |

| Spouse | Mrs. Ann Price | |
|---|---|---|
| @ DV | 21–May–96 | 38.8 |
| DB | 20–Aug–57 | |
| @ DD | 28–Jun–94 | 36.9 |
| LE @ DD | | |
| Ben | Child | |
| @ DV | 21–May–96 | 5.9 |
| DB | 01–Jul–90 | Est |
| @ DD | 28–Jun–94 | 4.0 |
| Josh | Child | |
| @ DV | 21–May–96 | 1.4 |
| DB | 01–Jan–95 | Est |
| @ DD | 28–Jun–94 | -0.5 |

### Household Work:

| | |
|---|---|
| Male Rate (1987) | $6.34 |
| Female Rate (1987) | $5.65 |
| Male Rate (1995)* | $8.72 |
| Female Rate (1995)* | $7.77 |
| *Adjusted for inflation | |
| [1996 CPI] / [1987 CPI] | |
| 156.3/113.6 = | 1.3758 |

### Benefits:

| | |
|---|---|
| Medical | 7.50% |
| Retirement | 2.60% |
| Life Insurance | 0.80% |
| FICA | 6.40% |
| TOTAL | 17.30% |

1994 Employee Benefits,
US Chamber of Commerce,
Table 14.

### EARNINGS:

| Year | Total^1 | Notes |
|---|---|---|
| 1989 | $20,078 | |
| 1990 | $19,641 | |
| 1991 | $26,656 | |
| 1992 | $30,110 | |
| 1993 | $31,391 | |
| 1994 | $31,850 | Estimated for 1994 |

### LOSS SUMMARY

| | |
|---|---|
| Past | $43,635 |
| Future | $540,029 |
| Total | $583,664 |

Defs EXHIBIT 2
Trout K
5-3-96
(3 pgs total)
2.1

# Woods: Price v. San Diego
## Losses to Survivors of: Dan Price

| Year | t | AGES DP | AGES AP | D. Price Income $ (1) | % Ben $ @ 17.3% (2) | Total Income $ (1)+(2) (3) | Household Production Dan Price hr/wk (4) | Dan Price $ @ $8.72/hr (5) | Ann Price hr/wk (6) | Ann Price $ @ $7.77/hr (7) | Total HH Prod $ (5+7) (8) | Total Income + HH Prod $ (3+8) (9) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Past Losses:** | | | | | | | | | | | | |
| 1994 | | 36 | 37 | 0 | 0 | 0 | 7.6 | 1,728 | 46.2 | 9,328 | 11,056 | 11,056 |
| 1995 | | 37 | 38 | 31,850 | 5,510 | 37,360 | 7.8 | 3,524 | 46.4 | 18,773 | 22,297 | 59,657 |
| 1996 | | 38 | 39 | 15,925 | 2,755 | 18,680 | 7.9 | 1,796 | 46.7 | 9,445 | 11,241 | 29,921 |
| TOTALS | | | | | | | | | | | | |
| **Future Losses:** | | | | | | | | | | | | |
| 1996 | 0.3 | 38 | 39 | 15,925 | 2,755 | 18,680 | 7.9 | 1,796 | 46.7 | 9,445 | 11,241 | 29,921 |
| 1997 | 1 | 39 | 40 | 31,850 | 5,510 | 37,360 | 8.1 | 3,661 | 47.0 | 19,007 | 22,668 | 60,028 |
| 1998 | 2 | 40 | 41 | 31,850 | 5,510 | 37,360 | 8.2 | 3,729 | 47.3 | 19,124 | 22,853 | 60,213 |
| 1999 | 3 | 41 | 42 | 31,850 | 5,510 | 37,360 | 8.4 | 3,797 | 47.6 | 19,242 | 23,038 | 60,398 |
| 2000 | 4 | 42 | 43 | 31,850 | 5,510 | 37,360 | 8.5 | 3,865 | 47.9 | 19,359 | 23,223 | 60,583 |
| 2001 | 5 | 43 | 44 | 31,850 | 5,510 | 37,360 | 8.7 | 3,933 | 48.2 | 19,476 | 23,409 | 60,769 |
| 2002 | 6 | 44 | 45 | 31,850 | 5,510 | 37,360 | 8.8 | 4,001 | 48.5 | 19,593 | 23,594 | 60,954 |
| 2003 | 7 | 45 | 46 | 31,850 | 5,510 | 37,360 | 9.0 | 4,069 | 48.8 | 19,710 | 23,779 | 61,139 |
| 2004 | 8 | 46 | 47 | 31,850 | 5,510 | 37,360 | 9.1 | 4,137 | 49.1 | 19,828 | 23,964 | 61,325 |
| 2005 | 9 | 47 | 48 | 31,850 | 5,510 | 37,360 | 9.3 | 4,205 | 49.3 | 19,945 | 24,150 | 61,510 |
| 2006 | 10 | 48 | 49 | 31,850 | 5,510 | 37,360 | 9.4 | 4,273 | 49.6 | 20,062 | 24,335 | 61,695 |
| 2007 | 11 | 49 | 50 | 31,850 | 5,510 | 37,360 | 9.6 | 4,341 | 49.9 | 20,179 | 24,520 | 61,880 |
| 2008 | 12 | 50 | 51 | 31,850 | 5,510 | 37,360 | 9.7 | 4,409 | 50.2 | 20,297 | 24,706 | 62,066 |
| 2009 | 13 | 51 | 52 | 31,850 | 5,510 | 37,360 | 9.9 | 4,477 | 50.5 | 20,414 | 24,891 | 62,251 |
| 2010 | 14 | 52 | 53 | 31,850 | 5,510 | 37,360 | 10.0 | 4,545 | 50.8 | 20,531 | 25,076 | 62,436 |
| 2011 | 15 | 53 | 54 | 31,850 | 5,510 | 37,360 | 10.2 | 4,613 | 51.1 | 20,648 | 25,261 | 62,621 |
| 2012 | 16 | 54 | 55 | 31,850 | 5,510 | 37,360 | 10.3 | 4,681 | 51.4 | 20,765 | 25,447 | 62,807 |
| 2013 | 17 | 55 | 56 | 31,850 | 5,510 | 37,360 | 10.5 | 4,749 | 51.7 | 20,883 | 25,632 | 62,992 |
| 2014 | 18 | 56 | 57 | 31,850 | 5,510 | 37,360 | 10.6 | 4,817 | 52.0 | 21,000 | 25,817 | 63,177 |
| 2015 | 19 | 57 | 58 | 31,850 | 5,510 | 37,360 | 10.8 | 4,885 | 52.2 | 21,117 | 26,002 | 63,362 |
| 2016 | 20 | 58 | 59 | 31,850 | 5,510 | 37,360 | 10.9 | 4,953 | 52.5 | 21,234 | 26,188 | 63,548 |
| 2017 | 21 | 59 | 60 | 31,850 | 5,510 | 37,360 | 11.1 | 5,021 | 52.8 | 21,352 | 26,373 | 63,733 |
| 2018 | 22 | 60 | 61 | 31,850 | 5,510 | 37,360 | 11.2 | 5,089 | 53.1 | 21,469 | 26,558 | 63,918 |
| 2019 | 23 | 61 | 62 | 31,850 | 5,510 | 37,360 | 11.4 | 5,157 | 53.4 | 21,586 | 26,744 | 64,104 |
| 2020 | 24 | 62 | 63 | 31,850 | 5,510 | 37,360 | 11.5 | 5,225 | 53.7 | 21,703 | 26,929 | 64,289 |
| 2021 | 25 | 63 | 64 | 13,377 | 2,314 | 15,691 | 11.7 | 2,223 | 54.0 | 9,165 | 11,388 | 27,079 |
| TOTALS | | | | | | $931,012 | | $110,652 | | $507,134 | $617,786 | $1,548,798 |

# Woods: Price v. San Diego
## Losses to Survivors of: Dan Price

| Total Income + HH Prod | Consumption % Dan Price | Consumption $ Dan Price | Gross Loss $ | PV of Loss @ 2.0% | Cumul PV of Loss $ | Disc Rate 2.00% Total Loss |
|---|---|---|---|---|---|---|
| (9) | (10) | (11) | (12) | (13) | (14) | $583,664 |
| | % | $ (9*10) | $ (9-11-7) | $ | $ | |
| 11,056 | 18.5% | 2,045 | (317) | (317) | (317) | |
| 59,657 | 19.2% | 11,454 | 29,430 | 29,430 | 29,113 | 6 months |
| 29,921 | 19.9% | 5,954 | 14,522 | 14,522 | 43,635 | 6 months |
| 29,921 | 19.9% | 5,954 | 14,522 | 14,450 | 58,085 | 6 months |
| 60,028 | 20.6% | 12,366 | 28,655 | 28,093 | 86,178 | |
| 60,213 | 21.2% | 12,765 | 28,324 | 27,224 | 113,402 | |
| 60,398 | 21.7% | 13,106 | 28,050 | 26,432 | 139,835 | |
| 60,583 | 22.2% | 13,450 | 27,775 | 25,660 | 165,495 | |
| 60,769 | 22.7% | 13,795 | 27,498 | 24,906 | 190,401 | |
| 60,954 | 23.1% | 14,080 | 27,280 | 24,224 | 214,625 | |
| 61,139 | 23.5% | 14,368 | 27,061 | 23,558 | 238,183 | |
| 61,325 | 23.8% | 14,595 | 26,902 | 22,960 | 261,143 | |
| 61,510 | 24.1% | 14,824 | 26,741 | 22,376 | 283,519 | |
| 61,695 | 24.3% | 14,992 | 26,641 | 21,855 | 305,374 | |
| 61,880 | 24.5% | 15,161 | 26,540 | 21,345 | 326,719 | |
| 62,066 | 24.0% | 14,896 | 26,873 | 21,189 | 347,909 | |
| 62,251 | 24.1% | 15,002 | 26,835 | 20,744 | 368,653 | |
| 62,436 | 24.1% | 15,047 | 26,858 | 20,355 | 389,008 | |
| 62,621 | 24.2% | 15,154 | 26,819 | 19,927 | 408,935 | |
| 62,807 | 24.2% | 15,199 | 26,842 | 19,553 | 428,488 | |
| 62,992 | 23.4% | 14,740 | 27,369 | 19,546 | 448,034 | |
| 63,177 | 23.4% | 14,783 | 27,394 | 19,180 | 467,214 | |
| 63,362 | 23.3% | 14,763 | 27,482 | 18,864 | 486,078 | |
| 63,548 | 23.1% | 14,680 | 27,634 | 18,597 | 504,675 | |
| 63,733 | 23.0% | 14,659 | 27,723 | 18,291 | 522,966 | |
| 63,918 | 22.8% | 14,573 | 27,876 | 18,031 | 540,997 | |
| 64,104 | 22.5% | 14,423 | 28,094 | 17,816 | 558,813 | |
| 64,289 | 22.3% | 14,336 | 28,249 | 17,563 | 576,376 | |
| 27,079 | 22.0% | 5,957 | 11,957 | 7,288 | 583,664 | 5 months |
| $1,548,798 | | $357,670 | $683,994 | $540,029 | $583,664 | |

2.3

## PLAINTIFFS' WITNESS LIST

Lark Beardon, Palomar/Pomerado Health System

Wallace Benson, 15478 Bandy Canyon Road, Escondido, CA 92025; Telephone: (619) 743-0360; (San Diego Fire Department/Retired)

Sandi Bias, 12460 Vaughn Road, Poway, CA 92064; Telephone: 748-3175

Capt. Scott Boies, San Diego Sheriff's Department

Jeff Butler, San Diego Fire Department, Station 42, 12119 World Trade Drive, San Diego, CA 92128

Det. John Cherry, San Diego Sheriff's Department

Steven Clause, San Diego Sheriff's Department

Amber Creighton, 12460 Vaughn Road, Poway, CA 92064

Heather Creighton-Bias, 12460 Vaughn Road, Poway, CA 92064

Sgt. Creighton, San Diego Sheriff's Department

John W. Eisele, M.D., County of San Diego, Medical Examiner's Office

Sgt. G. Foote, San Diego Sheriff's Department

Orred Gabriel, (Address unknown)

George Gardener, San Diego Sheriff's Department

John Groff, San Diego Sheriff's Department

Sam Ikemoto, Palomar/Pomerado Health System

Det. D. Jopes, San Diego Sheriff's Department

Joan Jones, 13840 Tobiasson Road, Poway, CA

Ronnie Jones, San Diego Fire Department, 12119 World Trade Drive, San Diego, CA 92128

Barbara Knox, 15615 Pomerado Road, Poway, CA 92064

Aramide Lapite, 5727 Canoga Avenue, Apt. 265, Woodland Hills, CA 91367; Telephone: (818) 999-1550

Nancy Lawton, Palomar/Pomerado Health System

Tim Malone, 13644 Hilleary Place, Apt. 229, Poway, CA 92064

John McDonnell, San Diego Sheriff's Department

Beverly Miller, c/o Pomerado Hospital (nursing)

Det. Genero Moreno

Norm Pawchuk, San Diego Sheriff's Department

Scott Post, Poway Fire Department, 13050 Community Road,
    Poway, CA 92064

Ann Price, 13007 Berlin Street, Poway, CA 92064

Benjamin Price, 13007 Berlin Street, Poway, CA 92064

Joshua Price, 13007 Berlin Street, Poway, CA 92064

Margaret Price, 5501 W. May Road, Bloomington, Indiana 47403;
    Telephone: (812) 824-7084

Robert Price, 5501 W. May Road, Bloomington, Indiana 47403;
    Telephone: (812) 824-7084

Michael Quitagua, Poway Fire Department, 13050 Community Road,
    Poway, CA 92064

Chris Thomas Roberts (Address unknown)

Det. F. Rowe, San Diego Sheriff's Department

Deputy M. Selman, San Diego Sheriff's Department

Samuel Sheppard, San Diego Sheriff's Department

Deputy Tom Snowden, San Diego Sheriff's Department

Sgt. Julie Sutton, San Diego Sheriff's Department

Eugene L. Syrios, 13828 Tobiasson Road, Poway, CA 92064

Mark Talley, San Diego Sheriff's Department

Chris Thomas (Address unknown)

Timothy J. Thomas, 13805 Tobiasson Road, Poway, California 92064

Custodian of Records:
  San Diego Sheriff's Department
  San Diego Police Department
  Palomar/Pomerado Health System
  Law/Crandall, Inc.
  Poway Fire Department
  San Diego Fire Department
  San Diego County Grand Jury
  San Diego County Medical Examiner's Office

Case Title: Ann Price, et al.    Case No. 94-1917R (AJB)
            vs. County of San Diego, et al.

## LIST OF PLAINTIFFS' EXHIBITS

| NUMBER | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| | | | San Diego Sheriff Call Log Printout |
| | | | Dan Price's Daytimer |
| | | | Dan Price's wallet |
| | | | Dan Price's checkbook |
| | | | Sheriff report diagram of scene of stop |
| | | | Sheriff photo of scene depicting scene, Price vehicle and 1 patrol car |
| | | | Sheriff photo of scene depicting scene, Price vehicle and 1 patrol car |
| | | | Sheriff photo of scene depicting scene, Price vehicle and 1 patrol car |
| | | | Sheriff photo of scene depicting scene, Price vehicle and 1 patrol car |
| | | | Diagram Exhibit 2 to Groff deposition |
| | | | Diagram Exhibit 2 to Clause deposition |
| | | | Diagram Exhibit 2 to Sheppard deposition |
| | | | Poway Fire Department Paramedic records (Quitugua and Post) |
| | | | San Diego Fire Department call records |
| | | | Pomerado Hospital records |
| | | | Pomerado Hospital bills |
| | | | County of San Diego Medical Examiner's Autopsy Report #94-1204 by Dr. John Eisele including toxicology reports |
| | | | Photo of Dan Price's face at Pomerado Hospital #9/2401 |
| | | | Photo of Dan Price's face at Pomerado Hospital #8/2401 |
| | | | Photo of Dan Price's face at Pomerado Hospital #16/2401 |

1

Photo of Dan Price's face at Pomerado Hospital #18/2401

Photo of Dan Price in shorts attended by doctors #21/2401

Photo of Dan Price's knees #24/2401

Photo of Dan Price's right ankle #12/2401

Photo of Dan Price's left ankle #13/2401

Photo of Dan Price's left wrist #119/2419

Photo of Dan Price's right wrist #195/2583

Photo of Dan Price's left wrist #126/2419

Photo of Dan Price's right wrist #124/2419

Photo of Dan Price's left wrist #120/2419

Photo of Dan Price's right wrist #196/2583

Photo of Dan Price's left wrist #6/2401

Photo of Deputy Groff at hospital #17/2398

Photo of Deputy Groff at hospital #8/2391

Photo of Deputy Talley at hospital #13/2398

Photo of Deputy Clause at hospital #15/2398

Photo of Deputy Sheppard at hospital #28/2398

Photo of Deputy Groff's name plate at hospital #18/2391

Photo of Deputy Groff's right hand at hospital #16/2391

Photo of Deputy Groff's right elbow at hospital #22/2398

San Diego Sheriff's Department Press Release re: Dan Price

San Diego Sheriff's Department "Found Property" document dated 6/30/94

San Diego Sheriff's Department follow up investigative report - 5 pages by Det. Jopes dated 8/11/94

San Diego Sheriff's Department follow up investigative report -
3 pages by Det. Cherry dated 9/14/94

2

San Diego Sheriff's Department follow up investigative report - 5 pages by Det. Rowe dated 7/20/94

San Diego Sheriff's Department follow up investigative report re: interview of Deputy Clause by Det. Jopes - 3 pages dated 8/11/94

San Diego Sheriff's Department follow up investigative report - 1 page, re: second interview of Deputy Clause dated 8/29/94

San Diego Sheriff's Department follow up investigative report re interview of Deputy Sheppard - 2 pages by Det. Morens dated 8/18/94

San Diego Sheriff's Department follow up investigative report - 5 pages re: interview of Deputy Talley by Det. Cherry dated 7/19/94

San Diego Sheriff's Department follow up investigative report - 2 pages re: interview of Deputy Sheppard by Det. Morens dated 8/18/94

San Diego Sheriff's Department follow up investigative report - 1 page re: interview of witness Tim Thomas by Det. Jopes dated 8/11/94

Interview of Deputy Groff by Detective Rowe and Moreno dated 6/28/94 - 22 pages

Interview of Deputy Clause by Detectives Rowe and Jopes dated 6/28/94 - 18 pages

Interview of Deputy Clause by Detectives Jopes and Rowe dated 8/16/94 - 12 pages

Interview of Deputy Talley by Detectives Cherry and Moreno dated 6/28/94 - 17th pages

Interview of Deputy Sheppard by Detective Moreno dated 6/28/94 - 12 pages

Deputy Sheppard's "Deputy's Daily Patrol Log" dated 6/28/94

Deputy Groff's "Deputy's Daily Patrol Log" dated 6/28/94

3 page computer printout San Diego Sheriff's Department "Complaint History Detail call #941790923

San Diego Sheriff's Department Manual of Policies and Procedures (18 pages produced in discovery by defendants)

Death Certificate re:  Dan Price and amendment re: cause of death

3

File of Dr. Eisele re: Dan Price (Exhibit 15, to Eisele deposition)

San Diego Sheriff's Department 75th Academy Class Schedule of Deputy Talley

San Diego Sheriff's Department 73rd Sheriff's Academy Class Schedule of Deputy Groff

The Final Report of The Custody Death Task Force by San Diego Police Department June 1992

Various articles on positional asphyxia by Dr. Donald Reay

Article by Cal Krosch (SDPD), "Some In Custody Deaths Cited as Preventable (1992)

1992 San Diego County Grand Jury responses and questions

The 1991 - 1992 San Diego County Grand Jury Final Report

San Diego County 7/16/92 Inter-Departmental memo from San Diego Sheriff's Department Lt. Tenwolde to J.G. Cellucci re: positional asphyxia - deaths of arrestees with accompanying articles

San Diego Sheriff's Department Inter-office Memo to Capt. Boies from A/S Mel Nichols. Subject: Positional asphyxia dated 7/20/92

County of San Diego inter-departmental memo of 7/21/92 from Capt. Boies to Lt. Peltner, Sgt. Reynolds and Dep. Snowden and Training Division re: positional asphyxia

10/5/92 County of San Diego inter-departmental correspondence from Dep. Snowden to Capt. Boies

1/29/93 San Diego Sheriff's Department memo "Safety Precautions" re: the Pro-Straint Vehicle Seat

10/6/93 Inter-departmental memo from Dep. Tom Snowden to Lt. John Tenwolde re: "composite report and needs assessment for non-lethal use of force policy, procedures and equipment"

San Diego Sheriff's Department 4/94 Lesson Plan Nine and San Diego Regional Law Enforcement Training Center Arrest and Control document (44 pages)

San Diego Sheriff's Department August 1994 Training Bulletin entitled "Custody Deaths and Restraining Techniques" (3 pages)

S.I.C.D.S. Training Manual by MSI, Mace
Security International

Videotape, MSI, Awareness Training for
Positional Asphyxia Training for Positional
Asphyxia and Sudden In Custody Death

American Heart Association, <u>Instructor's
Manual for Basic Life Support</u>

American Heart Association, <u>Heartsaver Manual</u>

CPR practice "dummy"

Time line chart re: sheriff deputy contact
with Dan Price

Dan Price's payroll records

Price family financial records

Dan Price's life longitudinal time line re:
probability of future employment

Report of engineer James G. Copley,
Law/Crandall re: asphalt temperature

3 Charts of Plaintiffs' economist Robert
Trout

Audio tapes produced by San Diego Sheriff's
Department
  - from SDSD Communication Center
  - interviews of Deputies Groff, Clause,
    Talley and Sheppard

San Diego Sheriff's Department I.A. documents
re: brutality complaint of Orned Gabriel June
through August 1988 against Deputy Groff

I.A. documents re: brutality complaint of
Chris Thomas of August 1989 against Deputy
Groff

CPR/First Aid refresher course training
records of Deputy Groff

1994 SDSD Employee Evaluation of Deputy John
Groff by Sgt. Julie Sutton (4 pages) (1994)

1993 SDSD Employee Evaluation of Deputy John
Groff

1986 SDSD probationary employee rating of
Deputy Groff

San Diego County Superior Court records in
<u>Pena v. County of San Diego and John Groff</u>,
Case No. EC007365

Excerpts of deposition transcript of Thomas
Neuman, M.D.

5

Excerpts of deposition transcript of Donald T. Reay, M.D.

Excerpts of deposition transcript of Louis Reiter

Excerpts of deposition transcript of John W. Eisele, M.D.

Excerpts of deposition transcript of Robert D. MacFarlane, M.D.

Excerpts of deposition transcript of Jim Roache

Excerpts of deposition transcript of Thomas Snowden

Excerpts of deposition transcripts of John Groff

Excerpts of deposition transcript of Steven Clause

Excerpts of deposition transcript of Mark Talley

Excerpts of deposition transcript of Samuel Sheppard

San Diego Police Department Policy Manual Section 6.12

Excerpts of deposition transcript of Elmer J. Pellegrino

The U.S. Department of Justice, Office of Justice Programs, National Law Enforcement Technology Center article June 1995 entitled "Positional Asphyxia - Sudden Death"

The publication "POLICE, the Law Officers' Magazine in its July 1996, Volume 20, Number 7 edition article by Sgt. Dennis McCauley, "Gasping for Breath"

Article from the POLICE magazine edition (July 1996) entitled "Combative Subjects Require Special Care"

CHARLES R. WOODS, ESQ. (SB#95637)
**TROST, STREET, WOODS & MESSINA**
1202 Kettner Boulevard, Suite 4300
San Diego, California 92101
(619) 233-7633

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ANN PRICE, an individual;   )   CASE NO. 94-1917R (AJB)
et al.,                )
         Plaintiffs,  )
                 )   DECLARATION OF SERVICE
v.                  )   BY MAIL
                 )
COUNTY OF SAN DIEGO; et al.,  )
                 )
         Defendants.  )
_____)

    I, the undersigned, declare that:

    I am over the age of eighteen years and not a party to the action; I am employed in the County of San Diego, California, within which county the subject mailing occurred; my business address is 1202 Kettner Boulevard, Suite 4300, San Diego, California 92101. I am readily familiar with our law firm's practice for collection and processing of mail for mailing with the United States Postal Service. On the date set forth below, I served the following document(s): **PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** on the parties in the action by placing a true copy thereof in a separate envelope for each addressee named hereafter, addressed to each such addressee respectively as follows:

1

ORIGINAL

RICKY R. SANCHEZ, Deputy County Counsel (SB# 107559)
COUNTY OF SAN DIEGO
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
(619) 531-4874
Attorneys for Defendants

    I then sealed each envelope and placed each for collection and mailing on _____Dec. 30_____, 1996, following ordinary business practices.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed on _____Dec. 30_____, 1996.

_____Carol Fox_____

2